Argued and submitted April 3, affirmed May 24, petition for review denied
August 22, 1995 (321 Or 512)

ERNST HARDWARE COMPANY,
an Oregon corporation,
*Appellant,*

*v.*

ERNST HOME CENTER, INC.,
a Washington corporation,
*Respondent.*

(92C 10826-5; CA A84422)

895 P2d 1363

Daniel P. Chernoff argued the cause for appellant. With him on the briefs were Chernoff, Vilhauer, McClung & Stenzel, and Robert L. Engle and Engle & Schmidtman.

Jerry Kindinger, Seattle, Washington, argued the cause for respondent. With him on the brief were John P. Mele and Ryan, Swanson & Cleveland, Seattle, Washington, and Steven M. Lippold, Edward L. Clark, Jr., and Clark, Lindauer, McClinton, Fetherston, Edmonds & Lippold.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

## LEESON, J.

Plaintiff, Ernst Hardware Company, brought this action in equity to enjoin defendant, Ernst Home Center, Inc., from using the name Ernst in connection with the operation of its business in Oregon. After trial, the court dismissed plaintiff's complaint, denying relief under alternative claims of common law trade name infringement and trade name dilution under ORS 647.107. We review *de novo*, ORS 19.125(3), and affirm.

Plaintiff's business, originally operated as a hardware store when founded in 1912, now consists primarily of sales and service of John Deere tractors, irrigation equipment and related farming products and parts. Only about one and one-half percent of its business is general hardware sales. It is located in St. Paul, where, according to plaintiff, the population of "325 people couldn't support a hardware store." More than three-fourths of its $12.1 million gross income in 1993 was derived from customers in Marion and Yamhill counties and the region including Clackamas, Multnomah and Washington counties, although its goods and services were sold to customers in 32 of Oregon's 36 counties. Plaintiff's principal method of promotion is through classified advertisements in the *Capital Press*, a Salem-based weekly newspaper with statewide circulation to approximately 18,000 farms and farm-related businesses. Its advertisements identify the business as "ERNST HARDWARE CO." or as "ERNST TRUE VALUE HARDWARE CO." It also promotes its business with listings in telephone directories in Marion and Yamhill counties and in Portland, participation in various agricultural and trade shows, and sponsorship of several local civic events. Plaintiff expanded its business in 1988 by purchasing Cascade Tractor Company in McMinnville, another John Deere franchise located 23 miles from St. Paul, but did not change the name of that acquisition, because in that area "Cascade Tractor has a better name * * * and [is] more commonly accepted than Ernst Hardware Company."

Defendant is a Washington corporation, founded in 1889 and originally incorporated as "Ernst Brothers, Incorporated" in 1905. At the time this action was initiated, it operated 77 retail stores in eight western states, including

three in Oregon. The Oregon stores, located in Tigard, Milwaukie and Medford, advertise extensively through print and electronic media under the trade names ERNST and ERNST HOME & NURSERY. Defendant's marketing strategy, which includes advertising expenditures exceeding 10 percent of its gross sales, store signs, employee uniforms and shopping bag graphics, is part of a plan "to keep the name Ernst in front of the customer."

Defendant targets urban and suburban homeowners, selling general hardware, tools, furniture, lumber, automobile accessories and garden products. Defendant opened its first Oregon store in 1973, in Eugene. It operated under the trade names ERNST, ERNST HOME CENTER and ERNST HOME & NURSERY until late 1981. It continued to operate briefly under the name BI-MART, but then ceased all Oregon operations between 1982 and July 1992, when it opened the store in Tigard. It opened the stores in Milwaukie and Medford that November. The grand opening of each of defendant's stores featured special savings, giveaways and promotional activities in the wake of extensive advertising. After the Tigard store opened, plaintiff began to receive misdirected telephone calls on its Portland lines. Calls to plaintiff from persons trying to contact defendant reached a monthly peak of 311 in October 1992, after which plaintiff switched to an unlisted telephone number for its Portland lines. Plaintiff filed this action in May 1992, after learning that defendant planned to expand its operations into Oregon and to use the trade name Ernst.

■ At the outset, we note what this case is *not* about. Plaintiff's complaint does not allege that defendant seeks to profit from the goodwill or reputation associated with plaintiff's business. Neither does plaintiff assert that the name Ernst Home & Nursery is too similar to the name Ernst Hardware Company either visually or aurally. Further, there is no allegation of diverted sales, because plaintiff's and defendant's goods and services do not directly compete. Rather, plaintiff alleges that the value of its name has been diluted through "reverse confusion," a type of trade name infringement that occurs when a large, junior user of a trade name, such as defendant, saturates the market with a name

that is similar to the smaller, senior user's name and overwhelms the senior user's identity, goodwill and reputation in the minds of the public so that the senior user may eventually be seen as the infringer or merely as a part of the larger user. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F2d 947 (7th Cir 1992) (recognizing reverse confusion as redressable injury under Lanham Act, 15 USCA §§ 1051 *et seq*); *Banff, Ltd. v. Federated Dept. Stores, Inc.*, 841 F2d 486 (2d Cir 1988) (reverse confusion is actionable under Lanham Act); *Ameritech, Inc. v. American Inf. Technologies Corp.*, 811 F2d 960 (6th Cir 1987) (recognizing claim for reverse confusion under Ohio law); *Big O Tire Dealers v. Goodyear Tire & Rubber Co.*, 561 F2d 1365 (10th Cir 1977) (Colorado courts would recognize reverse confusion). The threshold issue on appeal is whether plaintiff has a protectible interest in the name Ernst.

Plaintiff asserts that it is entitled to an injunction preventing defendant from using the name Ernst in Oregon, because plaintiff has acquired a protectible interest in that name, under both the common law and ORS 647.107, resulting from its long-term use of the name Ernst Hardware Company. Defendant contends that plaintiff has failed to demonstrate a protectible interest in the name Ernst Hardware Company and that, even if it has, plaintiff has never presented itself to the public using only the name Ernst.

■■ At common law, if a trade name is distinctive, it is entitled to protection to the extent that imitation of that name causes or is likely to cause confusion in the market about the source of goods or services. *Frostig v. Saga Enterprises, Inc.*, 272 Or 565, 570, 539 P2d 154 (1975). If the trade name is composed of descriptive terms or personal names, which are not inherently distinctive, the plaintiff must establish that the name has acquired a secondary meaning among the purchasing public. *Id.*; *The 88¢ Stores, Inc. v. Martinez*, 227 Or 147, 152, 361 P2d 809 (1961); J. Thomas McCarthy, 2 *McCarthy on Trademarks and Unfair Competition* § 15.01 (3d ed 1994). Similarly, ORS 647.107 provides:

> "Likelihood of injury to business reputation or of dilution of the *distinctive quality of * * * a trade name valid at common law*, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or

the absence of confusion as to the source of goods or services." (Emphasis supplied.)

A name that is not inherently distinctive may nonetheless be entitled to protection under the statute if it becomes so by acquiring a secondary meaning. *Wedgwood Homes v. Lund*, 294 Or 493, 499, 659 P2d 377 (1983). Both plaintiff's common law and statutory claims depend on whether the name Ernst, when used as part of the name of plaintiff's business, has acquired a secondary meaning.

■ The doctrine of secondary meaning has been and remains an elusive attempt to set legal standards to determine the extent of a symbol's psychological impact on buyers. 2 *McCarthy* § 15.02. In Oregon, no one concise test has emerged as a method of proving secondary meaning. *Lift Truck, Inc. v. Bourne*, 235 Or 446, 450, 385 P2d 735 (1963). In each case, however, whether a name has acquired a secondary meaning is a question of fact that must be proved by the plaintiff. *The 88¢ Stores, Inc.*, 227 Or at 153-54. The difficulty of obtaining sufficient evidence is great. *Id.* at 159.

■ In *The 88¢ Stores, Inc.*, the Supreme Court held that a secondary meaning is acquired when a business name takes on a special significance to the consuming public, and stated:

> " 'The issue in each case is whether or not in fact *a substantial number* of present or prospective purchasers *understand the designation*, when used in connection with goods, services or a business, not in its primary lexicographical sense, but *as referring to a particular person or association.*' " 227 Or at 152-53 (quoting *Restatement Torts* § 716, *comment b* (1938)). (Emphasis supplied.)

That formulation has been used frequently since. *See, e.g., Lift Truck, Inc.*, 235 Or at 449 (to acquire a secondary meaning, a business name must acquire a special significance to the purchasing public); *Frostig*, 272 Or at 570 (plaintiffs must prove that name acquired a special significance to the public).

In this case, the parties disagree about the appropriate designation of "the purchasing public" when, as here, plaintiff and defendant are not competitors. *The 88¢ Stores, Inc., Lift Truck, Inc.* and *Frostig* each involved alleged trade name infringement by a defendant who was competing for the

plaintiff's customers. In those cases, the plaintiffs' and the defendants' purchasing publics were identical.

In *Wedgwood Homes*, however, a builder of high quality residential homes sought to enjoin the noncompeting use of the name Wedgwood as part of the business name of defendant's retirement apartment complexes. The Supreme Court explained that

> "secondary meaning is acquired *'when the name and the business become synonymous in the public mind*; and submerges the primary meaning of the name * * * in favor of its meaning as a word identifying that business.' *Visser v. Macres*, 214 Cal App 2d 249, 253, 29 Cal Rptr 367, 369 (1963)." 294 Or at 496. (Emphasis ours.)

The court held that, to be entitled to protection, the distinctive quality of the mark must be proved by demonstrating that

> "the mark has come to signify plaintiff's product *in the minds of a significant portion of consumers* and * * * evokes favorable images of plaintiff or its product[.]" *Id.* at 500. (Emphasis supplied.)

In that case, the plaintiff demonstrated the necessary high degree of positive association in the minds of consumers between its name, Wedgwood, and its product, homes, by means of a survey of the general public in the geographic region of its business. *Id.* The plaintiff's survey established that its name possessed a distinctive associational value with its product among "a significant percentage of the consuming public." *Id.* at 503.

In this case, both plaintiff and defendant presented expert testimony about market research surveys purporting to demonstrate the extent to which the name Ernst is associated with plaintiff's business in the minds of consumers. Plaintiff's survey consisted of two statistically significant statewide samples. The first sample was constructed one-half from plaintiff's customer list and one-half from subscribers to the *Capital Press*, representing the best approximation of plaintiff's potential customers. The second sample was composed of members of the general population selected at random, but with numerical quotas for each county. Defendant's survey universe, by contrast, consisted of a random sample of

the general public within a donut-shaped area between 10 and 12 miles surrounding St. Paul. Both surveys were conducted by professional market researchers. Plaintiff's experts testified that there was a high level of association between plaintiff's name and its products and services. Defendant's expert testified that there was a very insignificant secondary awareness. Each party was highly critical of the other's survey results, attacking both the survey design and methodology.

■  The trial court found that plaintiff's survey was "unpersuasive," and concluded that plaintiff had "failed to establish the existence of secondary meaning." On *de novo* review, where testimony of witnesses and the inferences to be drawn from it are in dispute, we give great weight to the findings of the trial judge. *Seitz v. Albina Human Resources Center*, 100 Or App 665, 674, 788 P2d 1004 (1990). We agree with the trial court's assessment of the evidence. Plaintiff's survey showed that among its first sample (customer list and *Capital Press* subscribers), 75 percent of the respondents could associate the name Ernst with plaintiff's business name. Among the general public interviewed in the second sample, however, only 5 percent made the name association, but 89 percent of those thought that Ernst Hardware is a chain of large home improvement stores. Defendant raised serious doubts about the methods plaintiff's surveyor used to screen and interview the respondents in both of its samples, thus calling into question the validity of the responses. Interviews among the first sample, for example, were conducted with whoever answered the telephone. Because no attempt was made to determine whether the respondent was plaintiff's customer, the methodology did not assure that a significant proportion of potential customers was in fact surveyed. Furthermore, among the general population sample, a substantial majority of those who recognized the name Ernst associated that name with defendant's business, notwithstanding the fact that some of those respondents thought that defendant's business is called Ernst Hardware. At best, plaintiff's survey evidence showed only that it may enjoy name recognition in a narrow market niche including its customers and some potential customers.

Other evidence at trial leads to the conclusion that plaintiff did not meet its burden of proving that its name has

acquired a secondary meaning. There was undisputed testimony that at least two other businesses in St. Paul, and perhaps two dozen others in Oregon, operate under the name Ernst. Plaintiff also admitted that the name Cascade Tractor Company has better advertising and selling power in a portion of plaintiff's market area than does the name Ernst Hardware. In sum, the record does not support a finding that, in the public's mind, the primary meaning of the name Ernst has become synonymous with plaintiff's product or services. *Wedgwood*, 294 Or at 496; *see also beef & brew, inc. v. Beef & Brew, Inc.*, 389 F Supp 179, 185 (D Or 1974) (mere market reputation is not enough; the name "must leap to primary significance and the Plaintiff has the burden of proving that the leap has occurred"). Because plaintiff's use of the name Ernst has not acquired a secondary meaning, plaintiff does not have a protectible interest in it.

Consequently, we need not reach the other issues raised by plaintiff's assignments. The trial court did not err in dismissing plaintiff's complaint.

Affirmed.