Eugene B. SNELL, Hugh R. Beaton, T. Wm. Brockenbrough, Jr., Clayton A. Minegar, Salvator Spada, Paul E. Crawford, John G.S. Billingsley, Wm. T. Sperry, Jr., Hugh Martin, V. Edwin P. Kuipers, Robert W. McClure, John E. Richter, Russell C. Jones, Thomas K. Kiefer, and Edward C. Elener, in their official capacities as the membership of the Council of the Delaware Association of Professional Engineers, an Agency of the State of Delaware, Plaintiffs Below, Appellants/Cross–Appellees,

v.

ENGINEERED SYSTEMS & DESIGNS, INCORPORATED, a Delaware corporation, Defendant Below, Appellee/Cross–Appellant.

No. 486, 1994.

Supreme Court of Delaware.

Submitted: July 18, 1995.
Decided: Sept. 13, 1995.
Rehearing Denied: Oct. 10, 1995.

Michael F. Foster, Deputy Attorney General, Department of Justice, Wilmington, for appellants/cross-appellees.

Joseph M. Bernstein, Wilmington, for appellee/cross-appellant.

John L. Reed[1] (argued) of White and Williams, Wilmington, Paul Cottrell, of Tighe, Cottrell & Logan, P.A., Wilmington, and Arthur Schwartz, of counsel, National Society of Professional Engineers, for amicus curiae National Society of Professional Engineers, Delaware Engineering Society, and Consulting Engineers Council of Delaware.

Before VEASEY, C.J., HARTNETT and BERGER, JJ.

VEASEY, Chief Justice:

In this appeal from the Court of Chancery, we consider whether Section 2825 of the Delaware Professional Engineers' Act, 24 *Del.C.*, chapter 28 (the "Act"), may constitutionally prohibit Engineered Systems and Designs ("ESD") from using the term "engineered" in its trade name. The Council of the Delaware Association of Professional Engineers (the "Council") brought this action for a declaratory judgment and injunctive relief, claiming that Section 2825 bars ESD's use of that term and that the statute is constitutional. ESD counterclaimed under 42 *U.S.C.* § 1983, alleging that Section 2825 violates its federal constitutional right to commercial free speech. The Court of Chancery denied the Council's application to enjoin ESD from using "engineered" in its trade name, denied the Council's request for a declaratory judgment that Section 2825 is constitutional on its face, and dismissed ESD's counterclaim. The Council appeals and ESD cross-appeals.

We agree with the Court of Chancery on this record that the Council did not prove that ESD could be constitutionally prohibited from using the term "engineered" and we conclude that the Court of Chancery correctly denied the Council's motion for injunctive

relief, but we reach these conclusions on different grounds and, thus, reverse in part. We hold that the Court of Chancery erred when it held that ESD's use of the term "engineered" is a *per se* violation of Section 2825 and that the Act is unconstitutional as applied to ESD. We agree with the Court of Chancery that ESD's counterclaim should be dismissed, but in view of our analysis of the case, we hold that it should be dismissed as moot. We remand to the Court of Chancery with directions to enter an appropriate declaratory judgment, to dismiss ESD's counterclaim as moot, and for other proceedings consistent with this Opinion. Accordingly, we: (1) **REVERSE** the holding that Section 2825 is unconstitutional as applied to ESD; (2) **AFFIRM** the denial of injunctive relief; (3) **AFFIRM** the dismissal of ESD's counterclaim; and (4) **REMAND** for proceedings consistent with this Opinion.

## I. STATUTORY HISTORY

The Act[2] regulates the practice of engineering within Delaware so as to "safeguard life, health and property and to promote the public welfare." 24 *Del.C.* § 2802. In furtherance of this goal, the Act defines the term "engineer," 24 *Del.C.* § 2803(5), provides for the qualifications of persons as engineers, 24 *Del.C.* §§ 2817–21, and prevents those persons not qualified as engineers from holding themselves out to the public as engineers.[3] It accomplishes this last task by regulating the use of the word "engineer," its modifications and derivatives. 24 *Del.C.* § 2825(2)–(3). It is this provision which is at the heart of this controversy. *See* Section III, *infra.*

The Act establishes the Delaware Association of Professional Engineers ("DAPE") to self-regulate the practice of engineering in Delaware. 24 *Del.C.* § 2804. The Act also establishes the Council of DAPE, which gov-

---

1. Mr. Reed originally appeared as a Deputy Attorney General and as attorney for appellants in the filing of the opening brief. At the time of the oral argument on July 18, 1995, he had resigned from the Department of Justice and appeared at oral argument on behalf of the *amicus curiae,* without objection and with the permission of the Court.

2. The Act became law on July 7, 1972, and succeeded 24 *Del.C.* § 2701 *et seq.,* which was enacted in 1941 and held to be constitutional in *State v. Durham,* Del.Super., 191 A.2d 646 (1963).

3. The Act requires any corporation or partnership that offers engineering services to obtain a Certificate of Authorization. 24 *Del.C.* § 2821(e).

erns DAPE and its members. 24 *Del.C.* § 2807(a), and authorizes it to bring actions on behalf of DAPE in the Court of Chancery to enjoin acts or practices that violate the Act. 24 *Del.C.* § 2826.

## II. THE FACTS

As the record in the Court of Chancery shows, there is no disputed issue of material fact, thus presenting matters of law for the plenary review of this Court. *See Hoechst Celanese v. Certain Underwriters at Lloyd's, London,* Del.Supr., 656 A.2d 1094, 1099 (1995).

ESD is a Delaware corporation with its principal place of business in New Castle County. Its primary activities include the development, manufacture and sale of instruments for measuring various parameters of water and instruments for measuring radiation. ESD is not licensed to practice engineering, does not practice engineering, and does not employ anyone who engages in the practice of engineering as defined in the Act. ESD has never held itself out as an engineering firm and has responded to all inquiries regarding its activities by stating that it is "a manufacturing concern and does not provide any engineering services." It nonetheless has used the word "engineered" as an adjective in its business name and advertising since 1975.[4]

ESD admits to being in "potential" violation of Section 2825 due to its use of the term "engineered."[5] It has refused to comply, however, with the Council's requests either to: (1) discontinue use of the word "engineered" after an eighteen-month transition period; or (2) include a disclaimer in its business documents stating that it does not offer engineering services. The Council then filed this suit in the Court of Chancery.

The trial court found, in response to a motion for summary judgment, that Section 2825 imposed a complete ban on ESD's use of the term "engineered." The court held, however, that ESD's use of the term "engineered" was not actually or inherently misleading, but only "potentially misleading" as those terms are used in the commercial speech jurisprudence of the United States Supreme Court.

Based on that analysis the Court of Chancery held that Section 2825 unconstitutionally infringed upon ESD's right to "commercial speech" under the First Amendment. The court then denied the Council's motion for declaratory judgment and related motion for injunctive relief. The court also dismissed ESD's counterclaim, finding that ESD did not allege an actionable "deprivation" under 42 U.S.C. § 1983, and that its claim was not ripe for adjudication. The Council appealed and ESD cross-appealed.

## III. THE STATUTE AND APPLICABLE PRINCIPLES OF STATUTORY CONSTRUCTION

Section 2825 prohibits any person or organization not authorized to practice engineering under the Act from using:

... any name, title, description or designation, either orally or in writing, *that will lead to the belief* that such person is entitled to practice engineering as defined in this chapter, including without limitation

---

4. It is important to observe that the record in this case is limited to an analysis of the word "engineered" as a modifier of the nouns "systems" and "designs." As such, it is used as an adjective derived from the past tense of the transitive verb "to engineer." Although there was an allegation in the complaint that defendant also used the term "engineering," that allegation either was not pressed before the Court of Chancery or did not form a basis for that court's decision:

> engineering...., *n.* **1.** the art or science of making practical application of the knowledge of pure sciences, as physics or chemistry, as in the construction of engines, bridges, buildings, mines, ships, and chemical plants. **2.** the

action, work, or profession of an engineer. **3.** skillful or artful contrivance; maneuvering. *Random House Unabridged Dictionary,* at 645 (2d ed. 1993). Whether or not ESD's use of the noun (or gerund) "engineering" would have created a different issue is not now before the court.

5. Apparently this admission was intended to test the constitutionality of the statute. We are not bound, however, by the admission insofar as it is designed to seek an advisory opinion. There must be an actual controversy. *See Stroud v. Milliken Enterprises, Inc.,* Del.Supr., 552 A.2d 476, 481 (1989). Because our analysis proceeds first to the proper construction of the statute, we do not reach the constitutional issue, except as a backdrop to statutory construction.

the words "engineer" or "engineering" or any modification or derivative of those words; ...

(emphasis added). The Court of Chancery interpreted Section 2825 as a *per se* ban of all uses of the term "engineer" and its derivatives by anyone not certified to practice the profession of engineering. The court then proceeded on this assumption when it analyzed Section 2825 under commercial free speech jurisprudence. *Snell v. Engineered Systems & Designs,* Del.Ch., C.A. No. 12865, slip op. at 3–4, 6–10, 1994 WL 672680 (Nov. 18, 1994). Despite the fact that ESD admits this purported breadth of the statutory ban,[6] we view the statute differently. Accordingly, we hold that the Court of Chancery erroneously interpreted the statute and that its constitutional analysis flowing therefrom was flawed.

This Court has spoken on the proper approach to the construction of statutes in various contexts, noting "the strong judicial tradition in Delaware in support of a presumption of the constitutionality of a legislative enactment." *Opinion of the Justices,* Del.Supr., 425 A.2d 604, 605 (1981).

> [W]e become mindful of the traditional self-restraint of this Court whenever it becomes engaged in testing the constitutionality of an act of the General Assembly.... Legislative acts should not be disturbed except in clear cases, and then only upon weighty considerations; a legislative enactment is cloaked with a presumption of constitutionality and should not be declared invalid unless its invalidity is beyond doubt. *Klein v. National Pressure Cooker Co.,* Del.Supr., 31 Del.Ch. 459, 64 A.2d 529 (1949).

*Justice v. Gatchell,* Del.Supr., 325 A.2d 97, 102 (1974); *see also Richardson v. Wile,* Del.Supr., 535 A.2d 1346, 1350 (1988) ("[W]here a possible infringement of a constitutional guarantee exists, the interpreting court should strive to construe the legislative intent so as to avoid unnecessary constitutional infirmities."). *See also United States v. X–Citement Video, Inc.,* —— U.S. ——, ——, 115 S.Ct. 464, 467, 130 L.Ed.2d 372 (1994) ("[A] statute is to be construed where fairly possible so as to avoid substantial constitutional problems.").

Based on this judicial tradition, we hold that the Court of Chancery erred in finding that Section 2825 bans all uses of the term "engineer" and hence is unconstitutional as applied to ESD. The Court of Chancery failed to consider the significance of the phrase in the statute that provides that usage of the derivatives of the term "engineer" is banned only if it "will lead to the belief that [ESD] ... is entitled to practice engineering...." That phrase, when read in conjunction with the remainder of Section 2825, serves to limit the applicability of that Section to only those uses of the term "engineer" that are misleading. As long as a derivative of the word "engineer" does not "lead to the belief" that the user of the term provides licensed engineering services, as defined by the Act, the use is permissible. *See Arbern–Wilmington, Inc. v. Director of Revenue,* Del.Supr., 596 A.2d 1385, 1390 (1991) (statute should not be read so that part becomes surplusage). Accordingly, the First Amendment jurisprudence of the United States Supreme Court is implicated merely as a backdrop to the interpretation of the statute.

The interpretation of the statute is aided by the synopsis to a recent amendment to Section 2825. This synopsis states that the amendment "clarifies the *limitations* on the public use of the word engineering by those not authorized to practice engineering for the general public." 68 *Del.Laws,* c. 24 (emphasis added). Had the General Assembly intended to ban all uses of the word "engineer" by those not certified, it would have been more logical for it to have used the word "prohibition" (or the equivalent) rather than the word "limitations" in the synopsis.[7] Section 2825 must be analyzed, therefore, with the understanding that it bans only uses of the term "engineer" which would "lead to the

---

6. *See supra* note 5.

7. *See In re Tavel,* Del.Supr., 661 A.2d 1061 (1995) (using synopsis to clarify statutory meaning); *Acierno v. Worthy Bros. Pipeline Corp.,* Del.

Supr., 656 A.2d 1085, 1092 (1995) (noting that commentaries are useful aids in interpreting statutory meaning).

belief that such person is entitled to practice engineering"—*i.e.*, a misleading use of any derivative of the word "engineer."

## IV. FIRST AMENDMENT JURISPRUDENCE AS A BACKDROP TO STATUTORY CONSTRUCTION

■ There is no dispute that, pursuant to the State's police power, the General Assembly may regulate the practice of engineering and the engineering profession within Delaware. *See State v. Durham*, Del.Super., 191 A.2d 646, 648 (1963) (state may regulate professions for the purpose of protecting the health, safety and welfare of its citizens). Likewise, it is undisputed that the Act itself is a proper application of the State's police power. The parties disagree, however, on the following issues: (1) whether Section 2825 may be constitutionally applied to ESD on this record under the commercial speech jurisprudence of the United States Constitution;[8] and (2) if Section 2825 is constitutional, whether Section 2825 covers ESD's use of the term "engineered."

■ Commercial speech is " 'linked inextricably' with the commercial arrangement it proposes." *Edenfield v. Fane*, 507 U.S. 761, ——, 113 S.Ct. 1792, 1798, 123 L.Ed.2d 543 (1993) (citing *Friedman v. Rogers*, 440 U.S. 1, 10 n. 9, 99 S.Ct. 887, 894 n. 9, 59 L.Ed.2d 100 *reh'g denied*, 441 U.S. 917, 99 S.Ct. 2018, 60 L.Ed.2d 389 (1979)). Therefore, the state's underlying interest in regulating the transaction gives it "a concomitant interest in the expression itself." *Id.* (citing *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 457, 98 S.Ct. 1912, 1919, 56 L.Ed.2d 444 *reh'g denied*, 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 198 (1978)). Consequently, state restrictions on commercial speech need be tailored only in "a reasonable manner to serve a substantial state interest in order to survive First Amendment scrutiny," *id.* (citing *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480, 109 S.Ct. 3028, 3034, 106 L.Ed.2d 388 (1989); *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 564, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980)), and need survive intermediate, rather than strict scrutiny, *id.*

In *Central Hudson*, the United States Supreme Court has developed a test for determining whether a state's circumscription of commercial speech runs afoul of the First Amendment. 447 U.S. at 566, 100 S.Ct. at 2351. Using the *Central Hudson* analysis, the Supreme Court recently upheld rules of the Florida Bar which prohibit personal injury lawyers from sending targeted direct mail solicitations to victims and their relatives for 30 days following an accident or disaster. *Florida Bar v. Went For It, Inc.*, —— U.S. ——, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995). The Court there reframed the *Central Hudson* test as follows:

> Under *Central Hudson*, the government may freely regulate commercial speech that concerns unlawful activity or is misleading. *Id.*, [447 U.S.] at 563–564, 100 S.Ct., at 2350. Commercial speech that falls into neither of those categories, like the advertising at issue here, may be regulated if the government satisfies a test consisting of three related prongs: first, the government must assert a substantial interest in support of its regulation; second, the government must demonstrate that the restriction on commercial speech directly and materially advances that interest; and third, the regulation must be " 'narrowly drawn,' " *id.*, at 564–565, 100 S.Ct., at 2350–51.

—— U.S. at ——, 115 S.Ct. at 2376.

The analysis has been held to involve an investigation of whether the speech is "actually or inherently misleading" or merely "potentially misleading." *Peel v. Attorney Reg-*

---

8. As the Court of Chancery noted, the "overbreadth doctrine[,]" which permits a party to argue that a statute interferes with protected speech even if the statute is constitutional as applied to the party before the court, *Broadrick v. Oklahoma*, 413 U.S. 601, 612–13, 93 S.Ct. 2908, 2915–16, 37 L.Ed.2d 830 (1973), does not apply to commercial speech, *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 481, 109 S.Ct. 3028, 3035, 106 L.Ed.2d 388 (1989); *see also San Francisco Arts & Athletics v. United States Olympic Comm.*, 483 U.S. 522, 536 n. 15, 107 S.Ct. 2971, 2981, 97 L.Ed.2d 427 (1987); *Bates v. State Bar of Ariz.*, 433 U.S. 350, 381, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 *reh'g denied*, 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977); *United States v. Kaufmann*, 7th Cir., 985 F.2d 884, 895, *cert. denied*, —— U.S. ——, 113 S.Ct. 2350, 124 L.Ed.2d 259 (1993). Therefore, this Court must determine if the statute applies to ESD's use of the term "engineered," and would reach the constitutional issue only if that question were answered in the affirmative.

*istration & Disciplinary Comm'n of Ill.*, 496 U.S. 91, 106–107, 110 S.Ct. 2281, 2291, 110 L.Ed.2d 83 (1990). "States may prohibit actually or inherently misleading commercial speech entirely. [Citation omitted]. They may not, however, ban potentially misleading commercial speech if narrower limitations could be crafted to ensure that the information is presented in a nonmisleading manner." *Id.* at 111, 110 S.Ct. at 2293 (Marshall, J., concurring).

Using this analysis, the Court of Chancery found that ESD's use of the term "engineered" was not actually or inherently misleading, but rather potentially misleading. Slip op. at 10–14, 1994 WL 672680. After finding that ESD's name was only potentially misleading, the court relied on its erroneous determination that Section 2825 banned all uses of the word "engineer," and found that Section 2825 did not meet the *Peel* test. The court stated that the First Amendment prevents the enforcement of Section 2825 against ESD and held that "Delaware cannot place an absolute prohibition on potentially misleading information." *Id.* The court then granted summary judgment for ESD on this issue.

▆▆▆ Based upon our reading of the Act, we hold that Section 2825 is not unconstitutional on its face or as applied to ESD on this record. Section 2825 meets the applicable tests articulated in *Peel, Central Hudson* and *Florida Bar* in that it: (1) does not prohibit the use of speech protected by the First Amendment; (2) is tailored to meet a substantial state interest; (3) directly advances that interest; and (4) is not more extensive than necessary.

## V. ESD'S USE OF TERM "ENGINEERED" IS NOT MISLEADING ON THIS RECORD

▆▆▆ Having determined that Section 2825 is not unconstitutional on its face or as ap-

plied to ESD, we next turn to the question of whether, on this record, ESD's use of the term "engineered" in its title misleads the public. The Court of Chancery concluded that the Council did not satisfy its burden of showing that ESD's use of the term, in fact, misled the public.

The Council contends that the Court of Chancery erred in its determination that the term "engineered" is not actually or inherently misleading. The Court of Chancery's determination that ESD's use of the term "engineered" was not actually or inherently misleading, although resembling a factual question, is actually a matter of law, *Peel,* 496 U.S. at 108, 110 S.Ct. at 2291–2292, subject to this Court's *de novo* review, *see Future Ford Sales, Inc. v. Public Serv. Comm'n of the State of Del.,* Del.Supr., 654 A.2d 837, 842 (1995) (questions of law subject to *de novo* review).[9]

We agree with the Court of Chancery that the term "engineered," as used by ESD, is not inherently misleading. *Peel* requires that, for a company's commercial use of a term to be inherently misleading, the term must be likely to deceive the public based upon the general public's use of the term. *Peel,* 496 U.S. at 103–104, 110 S.Ct. at 2289. In *Peel,* the Supreme Court turned to the dictionary to determine the understanding of the general public of certain terms used in a lawyer's advertisement. *Id.* at 104, 110 S.Ct. at 2289. Based on the terms' varied definitions, the Supreme Court reasoned that the advertisement was only potentially misleading. *Id.*

We look first to the statutory analysis of whether or not use of the term "will lead to the belief that [ESD] … is entitled to practice engineering…." 24 *Del.C.* § 2825. That issue can be determined only upon a proper factual predicate because, on its face, the use of the term "engineered" as an adjective modifying the nouns "systems" and "designs" does not necessarily lead to the belief that the defendant is holding itself out as being entitled to practice engineering.

9. The United States Supreme Court has not defined with any specificity the concept of "inherently misleading" commercial speech. The Court of Appeals for the Fifth Circuit gave some guidance, however, when it found that terms might be inherently misleading when they " 'ha[ve] no fixed, ascertainable meaning to the average Consumer … [and are] amorphous, and … misleading to the public….' " *Joe Conte Toyota, Inc. v. Louisiana Motor Vehicle Comm'n,* 5th Cir., 24 F.3d 754, 757 (1994) (quoting *Barry v. Arrow Pontiac, Inc.,* 100 N.J. 57, 494 A.2d 804 (1985)).

The statute contains some definitions.[10] Also, the dictionary defines the verb "engineer" as follows:

> **engineer** *vt* ... 8. to arrange, manage, or carry through by skillful or artful contrivance.

*Random House Unabridged Dictionary,* at 645 (2d ed. 1993). In the absence of proof to the contrary, ESD's use of the adjective "engineered" in its title would seem to describe the method of producing its product. Thus, it conforms more to the dictionary definition of an adjective derived from the verb "engineer" than it does to the Section 2825 definition. Based on the multiplicity of definitions of the term "engineer," and the fact that ESD's use seems to employ a definition not contemplated by Section 2825, we find that ESD's use of the term "engineered" is not actually or inherently misleading.

■ We now examine whether ESD's use of the adjective "engineered" in this context "will lead to the belief" that ESD is entitled to practice engineering. Section 2825 does not define the phrase "will lead to the belief." That is, it does not discuss what standard must be used when applying that phrase. We find that the most logical interpretation of this phrase is an implied "reasonable belief" standard. Thus, we find that the statute will be violated only if there is proof that the use of "engineered" in defendant's trade name would lead *a reasonable person* to believe that the defendant is holding itself out as engaging in the practice of engineering. *See Daniels v. State,* Del.Supr., 538 A.2d 1104, 1110 (1988) (allowing Court to read statute so as to conform to intent of legislature); *Murphy v. Board of Pension Trustees,* Del.Supr., 442 A.2d 950, 951 (1982) (noting that it is the Court's duty to construe a statute to conform with legislative intent); *C.*

*v. C.,* Del.Supr., 320 A.2d 717, 722 (1974) (holding that the Court should adopt any reasonable construction of a statute to avoid absurd or unworkable results); *X–Citement Video,* — U.S. at ——, 115 S.Ct. at 472 (Court must "read the statute to eliminate ... doubts so long as such a reading is not plainly contrary to the intent of [the legislature]"). *See also Streett v. State,* Del.Supr., 669 A.2d 9, 13, Berger, J. (1995). If the statute were construed to provide that any person's belief that ESD's use of "engineered" is misleading, no matter how irrational or unreasonable that belief may be, the statute could run afoul of the First Amendment. We therefore do not so construe the statute, and do not reach the constitutional question which would be presented by such a construction.

## V. BURDEN OF PROOF TO SHOW STATUTORY VIOLATION

■ Having determined that Section 2825 requires the use of a reasonable person standard, we next consider whether, on this record, the Council has adduced proof under Court of Chancery Rule 56 sufficient to create a genuine issue of material fact whether a reasonable person would be misled by ESD's use of the word "engineered" into believing that ESD is entitled to practice engineering. *See, e.g., E.I. Du Pont De Nemours & Co. v. Clark,* Del.Supr., 88 A.2d 436, 442 (1952) (Tunnell, J., dissenting); *see also Ibanez v. Florida Dep't of Business and Professional Regulation,* — U.S. ——, ——, 114 S.Ct. 2084, 2089, 129 L.Ed.2d 118 (1994) (agency "must demonstrate that harms it recites are real and that its restriction will in fact alleviate them to a material degree") (quoting *Edenfield v. Fane,* 507 U.S. 761, ——, 113 S.Ct. 1792, 1800, 123 L.Ed.2d 543 (1993)).

---

**10.** Section 2803(7) of the Act defines the "practice of engineering" as including:

> any professional service performed for the general public such as consultation, investigation, evaluation, planning, design or responsible supervision of construction or operation in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works or projects wherein the public welfare or the safeguarding of life, health or property is concerned or involved when such professional service requires the application of engineering principles and data, but it does not include the work ordinarily performed by persons who operate or maintain machinery or equipment, neither does it include engineering services performed by an employee of a firm or corporation that does not offer professional engineering services to the general public.

Section 2803(5) defines "engineer" as a "person who, by reason of his special knowledge and use of the mathematical, physical and engineering sciences and the principles and methods of engineering analysis and design acquired by an engineering education and engineering experience, is qualified to practice engineering."

In an appeal from the entry of summary judgment, the standard of appellate review is *de novo*. *Hoechst Celanese v. Certain Underwriters at Lloyd's, London,* Del.Supr., 656 A.2d 1094, 1099 (1995).

From an appellate perspective, a decision granting summary judgment over the objection of the non-movant, does not, strictly speaking, present for review "factual findings" but rather presents the legal conclusion that there is no factual bar to the determination of the legal merit of the movant's position. Since that determination is made on a paper record we are free to draw our own inferences as to the legal significance of such evidence. Given the same record, the Court is as institutionally competent to discern the existence of factual disputes as is the trial court.

*Id.* (quoting *Merrill v. Crothall–American, Inc.,* Del.Supr., 606 A.2d 96, 100 (1992)). *Cf. Arnold v. Society for Sav. Bancorp,* Del. Supr., 650 A.2d 1270, 1276 (1994).

We find that the Council has not satisfied its burden. The Council's evidence was limited to: (1) anecdotal evidence of approximately four persons who called ESD in a given year to inquire whether ESD offered engineering services; and (2) a 1992 Gallup Organization poll (the "Gallup Poll"),[11] in which 85 percent of a random sample of Missouri residents stated that, for a company to use the word "engineering" in its name, its work should be supervised by a licensed engineer.

Although the Council submitted that, on average, four people per year called ESD and asked if it provides engineering services, this evidence does not create an issue of material fact whether a reasonable person would be misled by ESD's use of the word "engineered." In order to prove that a reasonable person would have been misled, specific evidence in the nature of a survey[12] or actual proof of the state of mind of a reasonable number of callers might suffice. Those questions are not before us, but on the record before us, proof is missing that a reasonable person would be misled.

Further, there are two reasons why the impact of the 1992 Missouri Gallup Poll is not probative of the question whether a reasonable person would be misled in this case, notwithstanding the fact that relevant survey information is generally helpful in cases such as these, *see, e.g., Moore v. California State Bd. of Accountancy,* 2 Cal.4th 999, 9 Cal. Rptr.2d 358, 831 P.2d 798 (1992), *cert. denied,* 507 U.S. 951, 113 S.Ct. 1364, 122 L.Ed.2d 742 (1993). First, it is well accepted that current surveys are persuasive when they canvas the geographic area in which the challenged use occurs, or a geographic area reasonably close to that site. *See Ernst Hardware Co. v. Ernst Home Ctr., Inc.,* 134 Or.App. 560, 895 P.2d 1363, 1366–67 (1995). Here, the Gallup Organization conducted the survey among a random sample of Missouri residents for another purpose nearly three years ago. Missouri can hardly be said to be a geographic area reasonably close to Delaware. Second, the survey polled Missouri residents concerning the use of the word "engineering," not "engineered." As noted above,[13] the noun "engineering" is materially different from the adjective "engineered" in usage which is relevant here. *See 24 Del.C.* § 2803; *Random House Unabridged Dictionary,* at 645 (2d ed. 1993). Thus, the Missouri poll of December 19, 1992 cannot be found to constitute proof probative of ESD's

---

11. "The Missouri Board of Architects, Professional Engineers and Land Surveyors contracted with The Gallup Organization of Lincoln, Nebraska to conduct a survey to determine the expectations of Missourians regarding the use of the word 'engineer' or its derivatives in titles and company names." Max D. Larsen, Ph.D., *The Gallup Organization, Inc. Missouri Board of Architects, Professional Engineers and Land Surveyors—Reasonable Person Study* (Dec. 19, 1992).

12. This analysis with regard to surveys is analogous to that regularly used in trademark cases. It is customary in trademark cases to use survey information when attempting to show a confus-

ing similarity between a trademark sought to be protected and a trade or business name that is alleged to be infringing. *See Draper Communications v. Delaware Valley Broadcasters L.P.,* Del. Ch., 505 A.2d 1283, 1292 (1985); *Ernst Hardware Co. v. Ernst Home Ctr., Inc.,* Or.Ct.App., 134 Or.App. 560, 895 P.2d 1363, 1366–67 (1995); *Gulf Coast Bank v. Gulf Coast Bank & Trust Co.,* La.Supr., 652 So.2d 1306, 1314 (1995); *Cox v. Doctor's Assoc.,* 245 Ill.App.3d 186, 184 Ill.Dec. 714, 613 N.E.2d 1306 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1069, 127 L.Ed.2d 388 (1994).

13. *See supra* note 4.

use of the adjective "engineered" as misleading in this context.

The Council relies on *McWhorter v. State of Ala. Bd. of Registration for Professional Eng'rs & Land Surveyors*, Ala.Supr., 359 So.2d 769 (1978), in further support of its claim. In *McWhorter*, the Alabama Supreme Court reviewed an Alabama statutory scheme similar to the Act. The Alabama statute contained a nearly identical definition of "engineer" and a ban on its use by non-licensed persons. *Id.* at 772–73. The court enjoined McWhorter Engineering Company, a company that did not offer any engineering services but merely operated a machinery repair business, from using the word "engineering" in its title as the "[u]se of the term 'engineering' in McWhorter Engineering Company at least implies that McWhorter or an employee, is a professional engineer." *Id.* at 773 (citations omitted). The Council's reliance on this case is as problematic as its reliance on the 1992 Missouri Gallup Poll. The Alabama Supreme Court barred McWhorter from using the word "engineering," not "engineered," in its company name. Since the two words are materially different, the *McWhorter* analysis does not apply.

Based on the fact that the Council has failed to satisfy its burden of showing by a preponderance of the evidence that ESD's use of "engineered" in its title would mislead a reasonable person, we hold that Section 2825 on this record does not cover ESD's use of the term "engineered."[14]

## V. ESD'S COUNTERCLAIM

■ ESD counterclaimed against the Council pursuant to 42 U.S.C. § 1983, alleging that Section 2825 deprives ESD of its First Amendment rights. The Court of Chancery dismissed ESD's counterclaim for lack of ripeness. A dismissal based upon pleadings is subject to *de novo* review. *Des-*

*ert Equities v. Morgan Stanley Lever. Equity Fund*, Del.Supr., 624 A.2d 1199, 1204 (1993).

■ To support a Section 1983 claim, ESD must show that the Council has taken action under color of law that deprives it of a constitutional right. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). The Council has merely sought a judicial determination and requested injunctive relief. This Court's opinion holds that Section 2825 does not apply to ESD on the record below. Thus, ESD may not face any permissible opposition from the Council to the use of its name on this record. The counterclaim by ESD against the Council therefore is moot. Accordingly, we AFFIRM the order of the Court of Chancery dismissing the counterclaim.

## VI. CONCLUSION

The order of the Court of Chancery provides:

1. The Delaware Association of Professional Engineers' request for an injunction against Engineered Systems & Designs' use of the term "engineered" is denied.

2. The Delaware Association of Professional Engineers request for declaratory judgment that 24 *Del.C.* § 2825 is constitutional on its face is denied. 24 *Del.C.* § 2825 cannot be enforced against ESD, but may still be applied against inherently misleading speech.

3. Defendant ESD's claim under 42 U.S.C. § 1983 against plaintiffs is dismissed.

We hold that the Court of Chancery erred in construing Section 2825 and in declaring Section 2825 unconstitutional as applied to ESD. We therefore **REVERSE** the judgment of the Court of Chancery to the extent that, in refusing a declaratory judgment that

---

14. The Council offered to discontinue efforts to enforce Section 2825 against ESD if ESD voluntarily agreed to use the following disclaimer: "We do not offer, nor are we licensed to practice engineering under Delaware law." The Court of Chancery, relying upon the erroneous assumption that Section 2825 requires a total ban on the use of the word "engineer" and its derivatives by

those not licensed to practice engineering, held that Section 2825 must contain a disclaimer requirement for the Council to be able to ask ESD to employ one. Our decision that the Council has not shown that ESD's use of the term "engineered" is misleading renders the disclaimer requirement issue moot. Accordingly, we do not address this issue on appeal.

Section 2825 is constitutional on its face, it holds that Section 2825 is unconstitutional as a *per se* prohibition of any derivative of the word "engineer" by one not entitled to practice engineering. We hold that the statute is not unconstitutional on its face or as applied to ESD under these facts. We hold that the Council did not meet its burden of showing that ESD's use of the term "engineered" violated the statute because there is no probative showing on this record that such usage will lead a reasonable person to the belief that ESD is entitled to practice engineering. Accordingly, we **AFFIRM** the order of the Court of Chancery denying the Council's application for injunctive relief. We **AFFIRM** that portion of the order of the Court of Chancery dismissing ESD's counterclaim.

Finally, we **REMAND** this proceeding to the Court of Chancery with directions to enter an appropriate declaratory judgment and for other proceedings consistent with this Opinion. Jurisdiction is not retained.