[Cite as *Wilson v. Ohio State Chiropractic Bd.*, 2019-Ohio-3243.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Michael T. Wilson, D.C.,                 :

      Appellant-Appellant,            :

                                                No. 18AP-739

v.                                       :           (C.P.C. No. 17CV-2014)

Ohio State Chiropractic Board,           :        (ACCELERATED CALENDAR)

      Appellee-Appellee.              :

---

D E C I S I O N

Rendered on August 13, 2019

---

**On brief:** *Gibbs Law Firm, P.A.* and *David C. Gibbs, III*; *Kimberly Y. Smith Rivera*, for appellant. **Argued:** *David C. Gibbs, III.*

**On brief:** [*Dave Yost*], Attorney General, and *Henry G. Appel*, for appellee. **Argued:** *Henry G. Appel.*

---

APPEAL from the Franklin County Court of Common Pleas

KLATT, P.J.

{¶ 1} Appellant-appellant, Michael T. Wilson, D.C., appeals from the judgment of the Franklin County Court of Common Pleas which affirmed the adjudication order of appellee-appellee, Ohio State Chiropractic Board ("the board"), suspending his license for a period of 180 days, with 90 days stayed, and imposing a civil fine of $2,000.[1] For the reasons that follow, we affirm.

{¶ 2} Appellant became a licensed chiropractic physician in 1994. In April 1998, the board charged appellant with violations of R.C. Chapter 4734 involving false

---

[1] Pursuant to an agreed order dated October 19, 2018, the court's judgment was stayed pending the outcome of this appeal.

advertising, improper solicitation, and fraud.  On June 30, 1998, appellant entered into a Consent Agreement with the board pursuant to which his license was permanently revoked. The revocation was stayed and, after a one-year suspension and a period of probation, appellant's license was reinstated in 2005.

{¶ 3}   On November 4, 2015, appellant placed an advertisement in the Columbus Dispatch identifying himself as "Dr. M. Todd Wilson, D.NMSc, DC."  On March 7 and 8, 2016, he ran television advertisements on Fox 28, WTTE in Columbus, Ohio, identifying himself as "Dr. Todd Wilson," and "Dr. M. Todd Wilson, D.NMSc, DC," respectively.  It is undisputed that appellant intended the March 7 advertisement to include the same credentials as the March 8 advertisement, and that the failure to include them was the television station's error.  In both the newspaper and on television, appellant advertised that he diagnosed and treated, inter alia, hormone imbalances, thyroid disorders, and diabetes.

{¶ 4}   On August 4, 2016, appellee issued to appellant an "Amended Notice of Opportunity For Hearing" letter ("notice letter"), advising him that it would consider whether to take disciplinary action against him for alleged violations of R.C. 4734.31(C)(7), (C)(31) and (C)(32) and Ohio Adm.Code 4734-9-02 and 4734-9-08.  Specifically, the notice letter stated that the advertisements (both print and television) "failed to clearly reveal that you are a chiropractic physician" in violation of R.C. 4734.31(C)(7) and Ohio Adm.Code 4734-9-02(F) (Counts 1 and 2); "failed to contain one of these exact terms: chiropractic, chiropractor, doctor of chiropractic or chiropractic physician" in violation of R.C. 4734.31(C)(7) and Ohio Adm.Code 4734-9-02(G) (Counts 3 and 4); and "included the credentials 'D.NMSc' after your name"  which was "misleading in that the credential is not a recognized credential by the chiropractic profession.  To wit, according to your website, drtoddwilson.com, 'D.NMSc' means Doctor of NeuroMetabolic Sciences, a credential awarded by the International Association of NeuroMetabolic Professionals (IANMP). According to the IANMP website, www.ianmp.com, the IANMP is a non-profit organization whose mission is to promote the practice of both functional medicine and functional neurology.  The IANMP is headquartered at your practice location and phone number and you are the Executive Director of IANMP."  The board alleged that such conduct, if proven,

constituted a violation of R.C. 4731.31(C)(7), (C)(31), and (C)(32) and Ohio Adm.Code 4734-9-02(C) and 4734-9-08(C) (Counts 5 and 6).[2]

{¶ 5} Appellant timely requested a hearing, which was held on October 7, 2016. Thereafter, the hearing examiner issued a report and recommendation which included findings of fact and conclusions of law. The board subsequently adopted the hearing examiner's report and recommendation in its entirety and issued an adjudication order concluding, as a matter of law, that appellant engaged in the conduct set forth in Counts 1-6 of the notice letter. The board included in its adjudication order the following statement: "The general public does not understand what the acronym 'D.C.' means and that is why the rule was implemented requiring that chiropractors use 'chiropractic'[,] 'chiropractor'[,] 'doctor of chiropractic'[,] or 'chiropractic physician' in all advertisements and solicitations. The failure to do so is misleading to the public." Accordingly, pursuant to the authority vested in the board by R.C. 4734.31, the board ordered that appellant's license be suspended for 180 days, with 90 days stayed, and that he pay a $2,000 civil fine.

{¶ 6} Pursuant to R.C. Chapter 119, appellant timely appealed to the court of common pleas, which affirmed the board's order. Thereafter, appellant timely appealed to this court, advancing the following four assignments of error for our review:

> [I]. THE LOWER COURT ERRED IN DETERMINING THAT THE BOARD'S RESTRICTION ON DR. WILSON'S COMMERCIAL USE OF THE D.NMSc CREDENTIAL DID NOT VIOLATE HIS FIRST AMENDMENT RIGHTS.
>
> [II]. THE LOWER COURT ERRED IN DETERMINING THAT THE BOARD'S DISCIPLINE OF DR. WILSON FOR HIS COMMERCIAL USE OF THE D.NMSc CREDENTIAL DID NOT VIOLATE HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS.
>
> [III]. THE LOWER COURT ERRED IN DETERMINING THAT DR. WILSON'S COMMERCIAL USE OF "DC" FAILED TO IDENTIFY HIM AS A CHIROPRACTOR.
>
> [IV]. THE LOWER COURT ERRED IN DETERMINING THAT THE BOARD'S FORCED COMMERCIAL DISCLOSURE DID

---

[2] Counts 1, 3 and 5 involved the newspaper advertisements; Counts 2, 4, and 6 concerned the television advertisements.

NOT VIOLATE DR. WILSON'S FIRST AMENDMENT RIGHTS.

{¶ 7} In an administrative appeal under R.C. 119.12, the common pleas court reviews the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. *Pons v. Ohio State Med. Bd.,* 66 Ohio St.3d 619, 621 (1993). The standard of review for a court of appeals in an administrative appeal is more limited; this court must determine whether the common pleas court abused its discretion. *Id.* An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). An unreasonable decision is one unsupported by a sound reasoning process. *AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.,* 50 Ohio St.3d 157, 161 (1990). An arbitrary decision is one that lacks adequate determining principle and is not governed by any fixed rules or standard. *Porter, Wright, Morris & Arthur, LLP v. Frutta del Mondo, Ltd.,* 10th Dist. No. 08AP-69, 2008-Ohio-3567, ¶ 11. An unconscionable decision is one that affronts the sense of justice, decency, or reasonableness. *Id.* On questions of whether an agency's decision is in accordance with law, an appellate court exercises plenary review. *Gralewski v. Ohio Bur. of Workers' Comp.*, 167 Ohio App.3d 468, 2006-Ohio-1529, ¶ 17 (10th Dist.).

{¶ 8} At the October 7, 2016 hearing, the board's Executive Director Kelly A. Caudill, testified on behalf of appellee; appellant testified on his own behalf. Caudill averred that in 2007, the board determined that the designation "D.C." was insufficient to identify a chiropractic physician in an advertisement; accordingly, the board amended its administrative rules to require chiropractors to identify themselves in advertisements using one of the following exact terms: chiropractic, chiropractor, doctor of chiropractic, or chiropractic physician. Ohio Adm.Code 4734-9-02(F). According to Caudill, the board initiated the change based on "complaint history," i.e. "complaints that get filed from individuals complaining that an advertisement * * * didn't clearly reveal -- they didn't know they were going to a chiropractor. They didn't know it was a chiropractic ad." (Tr. at 72-73.) Caudill reiterated that "up until 2007 we had received complaints of ads just saying D.C., and that we had consumers in the public who were confused about what type of practitioner that ad was on behalf of." *Id.* at 73. Caudill further averred that "in [her]

experience," the public did "[n]ot always" understand what the acronym D.C. following a person's name meant, and that it was "a problem." *Id.* at 101-02. Caudill conceded that she had no "hard data" or records from 2007 regarding the number or type of complaints received by the board. *Id.* at 102. The parties stipulated that the board's minutes regarding the 2007 rule change included no supporting documentation pertaining to the board's deliberative process. *Id.* at 78.

{¶ 9} Caudill opined that under the amended rule, appellant's use of the designation D.C. in his print and television advertisements did not comport with Ohio Adm.Code 4734-9-02(F). She averred that the rule change was implemented to require chiropractic physicians to "clearly reveal to the public, to the reader, that the services they are looking at, that they're contemplating are offered by a chiropractor[,] * * * and listing D.C. * * * doesn't accomplish that." (Tr. at 80-81.) She agreed that consumers could conduct an internet search regarding the D.C. designation, but disagreed that adding the language now required in the rule would be more confusing to the public if the chiropractic physician was advertising for nutritional services rather than traditional chiropractic services.

{¶ 10} Regarding the IAMNP and the designation D.NMSc, Caudill testified that the board rules permit chiropractors to acquire additional certifications and form non-profit organizations. She averred that neither the IAMNP itself, nor appellant's status as executive director of the IANMP, violated any board rules and that the board had received no complaints concerning the IAMNP. When questioned about the charges in Counts 5 and 6 pertaining to appellant's use of the unrecognized credential D.NMSc, Caudill stated that "to the Board's knowledge D.NMSc is not a recognized credential." *Id.* at 90. She acknowledged that the board "did not cite a rule that said it had to be a recognized credential." *Id.* When asked if any such rule existed, Caudill replied, "I would say, no, if we didn't cite it." *Id.* Caudill further testified that the board does not maintain a list of recognized credentialing organizations for the chiropractic profession.

{¶ 11} During his testimony, appellant acknowledged that since 2007, board rules require that a chiropractic advertisement include more than just the D.C. designation; however, he asserted that the advertisements at issue were for nutritional, functional

medicine, and functional neurology services, not chiropractic services; thus, he was not required to include anything more than the D.C. credential in the advertisements.

{¶ 12} Regarding the D.NMSc credential, appellant acknowledged that it appears in his print and television advertisements as well as on his website. Appellant testified that he was awarded a doctorate in NeuroMetabolic Science by the IANMP, a non-profit organization incorporated in Florida in 2015 by appellant and two of his colleagues. Appellant is the executive director of the IANMP and the address listed on the incorporation documents is that of appellant's Reynoldsburg, Ohio practice. Appellant acknowledged that the IANMP is not licensed by the Ohio Board of Career Colleges, the Ohio Department of Education, the Florida Commission for Independent Education, or the Florida Department of Education. Appellant averred that the D.NMSc is not an academic degree; rather, it is a certification. Appellant identified state's exhibit 13, a printout of a page from appellant's website, which indicates that he "has been awarded a Doctor of NeuroMetabolic Sciences from the IANMP." Appellant also identified respondent's exhibit A, which sets forth the following eligibility requirements for D.NMSc certification: "To qualify for the D.NMSc credential you must have an MD, DO, or DC degree and demonstrate 300 hours training in the areas of functional medicine, functional neurology, myoneural medicine (trigenics), or neurofeedback. Documentation will be reviewed by our board to ensure it meets our requirements." Appellant further stated that the IANMP board requires that candidates for certification provide evidence of eligibility. He acknowledged that he and his colleagues did not pass any type of examination before being awarded the IANMP certification; rather, the three awarded the certification to each other "[b]ased on education that was checked." (Tr. at 43-44.) According to appellant, he created the IANMP because he "wanted to more clearly define what we do. * * * I don't practice what I believe to be chiropractics anymore. I do functional medicine and functional neurology, and there's no certification out there specifically that defines it, so that it's not confusing." *Id.* at 123.

{¶ 13} Preliminarily, we note that the common pleas court rejected appellant's contention that the advertisements at issue were for nutritional services, not chiropractic services, and therefore were not subject to the board's jurisdiction. The court found that the board's interpretation of the practice of chiropractic medicine and its inclusion of nutritional services was reasonable. The court concluded that the board had jurisdiction

over nutritional services and advice offered by chiropractors in the state of Ohio, that these services were within the board's proper sphere of authority, and that the board had jurisdiction over appellant's advertisements. The court further rejected appellant's contention that he was not required to comply with the board's advertising rules because he was advertising for nutritional services, not chiropractic services, and thus, his advertisements were not misleading or subject to regulation. Citing appellant's own hearing testimony that he performed "functional medicine and functional neurology" and ordered both blood and urine tests for his patients, the court found that there was reliable, probative, and substantial evidence to support the board's finding that appellant was advertising for the performance of services that were not merely nutritional in nature and were within Ohio's definition of the practice of chiropractic medicine. Appellant has not challenged these conclusions on appeal to this court.

{¶ 14} In his first assignment of error, appellant contends the common pleas court erred in determining that the board's restriction on his commercial use of the private credential D.NMSc did not violate his right to free speech under the First Amendment to the U.S. Constitution. We disagree.

{¶ 15} As noted above, the board alleged in Counts 5 and 6 of the notice letter that appellant's use of the D.NMSc credential was misleading and violated R.C. 4734.31(C)(7), (C)(31), and (C)(32) and Ohio Adm.Code 4734-9-02(C) and 4734-9-08(C), all of which generally preclude chiropractors from making false or misleading statements relative to their practice, advertising, or credentials.

{¶ 16} The United States Supreme Court has distinguished between non-commercial or "pure" speech and commercial speech. "Pure" speech is that in which society has an interest wholly apart from the economic interests of the speaker or its audience. *Abrahamson v. Gonzalez,* 949 F.2d 1567, 1574 (11th Cir.1992). In contrast, commercial speech consists of "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm.*, 447 U.S. 557, 561 (1980) ("*Cent. Hudson*"), citing *Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council,* 425 U.S. 748, 762 (1976). Commercial speech is afforded less constitutional protection than other constitutionally guaranteed expression. *Id.* at 563. "The protection available for particular commercial expression turns on the nature both of the expression

and of the governmental interests served by its regulation." *Id.* The parties agree that appellant's use of the term D.NMSc in his advertisements constitutes commercial speech.

{¶ 17} In *Cent. Hudson*, the court promulgated a four-part test to determine whether a restriction on commercial speech is constitutionally valid: (1) the speech must concern lawful activity and not be misleading; (2) the government must have a substantial interest in restricting the speech; (3) the regulation must directly advance the asserted governmental interest; and (4) the regulation must be narrowly tailored[3] to serve the governmental purpose. *Id.* at 566. Under this analysis, a regulation that only restricts unprotected commercial speech can be ruled constitutional without further inquiry. However, a regulation of protected commercial speech can be ruled constitutional only if the requirements of each of the last three prongs are met. In other words, the last three prongs of the *Cent. Hudson* analysis comprise a conjunctive test, and a regulation of protected commercial speech can be ruled unconstitutional for failing any one of these three requirements. " '[T]he party seeking to uphold the restriction on commercial speech carries the burden of justifying it.' " *Edenfield v. Fane,* 507 U.S. 761, 770 (1993), quoting *Bolger v. Youngs Drug Prods. Corp.,* 463 U.S. 60, 71, fn. 20 (1983).

{¶ 18} As the first prong of the *Cent. Hudson* test states, the First Amendment provides no protection for commercial speech that is misleading. Given that the primary purpose of commercial speech is to provide information to the public by means of advertising, such speech can be suppressed when the stated information is more likely to deceive the public than to inform it. *Cent. Hudson* at 563.

{¶ 19} Thus, the state is empowered to ban commercial speech that is false, deceptive, or misleading. *See Ibanez v. Florida Dept. of Business and Professional Regulation, Bd. of Accountancy,* 512 U.S. 136, 142 (1994). There are two types of deceptive or misleading commercial speech: speech that "is inherently likely to deceive" and speech that, while initially unobjectionable, is supported by a record that indicates that the particular form or method of speech "has in fact been deceptive." *In re R.M.J.,* 455 U.S. 191, 203 (1982). When commercial speech is inherently likely to deceive, the state can take

---

[3] In *Bd. of Trustees of The State Univ. of New York v. Fox,* 492 U.S. 469 (1989), the Supreme Court modified the fourth prong of the *Cent. Hudson* analysis. The inquiry is whether the restriction is narrowly tailored to serve the governmental interest. Previously, the fourth prong examined whether the means were no more restrictive than necessary. *Id.* at 478.

preemptive action, and need not wait for the public to suffer actual harm. *See Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447, 464-66 (1978). "Whether the inherent character of a statement places it beyond the protection of the First Amendment is a question of law" over which an appellate court exercises de novo review. *Peel v. Atty. Registration & Disciplinary Comm.,* 496 U.S. 91, 108 (1990).

{¶ 20} A term is inherently misleading if it is " 'likely to deceive the public based upon the general public's use of the term.' " *Appeal of Sutfin,* 141 N.H. 732, 693 A.2d 73, 75 (1997), quoting *Snell v. Engineered Sys. & Designs, Inc.* 669 A.2d 13, 19 (Del.1995). "In general, a statement will only be inherently misleading if the statement, standing alone, will almost unavoidably lead to fraud, undue influence, intimidation or other duplicity." *Id.*

{¶ 21} Upon review of the record, we conclude that appellant's use of the designation D.NMSc in his chiropractic advertisements is inherently misleading and is thus afforded no protection under the First Amendment. Appellant acknowledged that D.NMSc connotes that he is a Doctor of NeuroMetabolic Science. That is simply not true. There is no such credential. Appellant admitted that the D.NMSc is not an academic degree; rather, it is a credential. However, the credential exists only because appellant and his colleagues created it. Moreover, the credential was bestowed upon appellant by the IANMP— an organization he and his colleagues formed—and one that is unlicensed by any Florida or Ohio entity governing academic accreditation of doctoral programs.

{¶ 22} Appellant admitted that he and his colleagues created the D.NMSc credential for the purpose of defining their "functional medicine and functional neurology" services and distinguishing them from traditional chiropractic services. As noted above, appellant testified that "I don't practice what I believe to be chiropractics anymore. I do functional medicine and functional neurology, and *there's no certification out there specifically that defines it.*" (Emphasis added.) (Tr. at 123.)

{¶ 23} In our view, it is clear that the general public likely would be deceived by appellant's use of the designation D.NMSc in his advertisements. A member of the public upon hearing or reading that appellant holds a doctorate would assume that appellant has completed a standardized course of study to obtain the degree when in fact appellant created both the credential and the organization that bestowed the credential. Accordingly, because appellant's use of the D.NMSc credential in his advertisements for chiropractic

services is inherently misleading, no violation of his First Amendment free speech rights occurred.

{¶ 24} Appellant's first assignment of error is overruled.

{¶ 25} In his second assignment of error, appellant contends the common pleas court erred in determining that the board's discipline for his use of the D.NMSc credential did not violate his due process rights to reasonable notice and a fair hearing under the Fourteenth Amendment to the U.S. Constitution.

{¶ 26} Appellant argues that while the board and the common pleas court concluded that his use of the D.NMSc certification is misleading because it is not recognized by the board, Caudill's testimony established that no administrative rule specifically prevents a chiropractor from advertising a certification not recognized by the board. Appellant asserts, therefore, that his "opportunity to be heard" was not "fundamentally fair" because "he had no rule warning him that the Board required its own recognition of a credential before he could use it, and even if he had known, he had no way to obtain that recognition." (Appellant's brief at 22.)

{¶ 27} " 'A fundamental requirement of due process, that is, notice and an opportunity to be heard, must be afforded an individual whose professional license is subject to [discipline] in an administrative hearing.' " *Griffin v. State Med. Bd. of Ohio,* 10th Dist. No. 11AP-174, 2011-Ohio-6089, ¶ 22, quoting *Johnson v. State Med. Bd. of Ohio,* 10th Dist. No. 98AP-1324 (Sept. 28, 1999). R.C. 119.07 provides, in pertinent part, that "notice shall * * * include the charges or other reasons for the proposed action, the law or rule directly involved, and a statement informing the party that the party is entitled to a hearing" if the party timely requests a hearing. Further, " 'the right to a hearing includes the right to appear at the hearing prepared to defend oneself through testimony, evidence, or argument against the charges brought.' " *Griffin* at ¶ 22, quoting *Johnson.* Thus, " 'due process requires that an individual receive fair notice of the precise nature of the charges that will be raised at a disciplinary hearing.' " *Id.*, quoting *Johnson.*

{¶ 28} Thus, the issue raised by this assignment of error resolves to whether appellant had a reasonable opportunity to understand the board's charges relative to the D.NMSC credential and whether he had a reasonable opportunity to respond to these charges at the hearing before the board.

{¶ 29} As noted above, the notice letter pertaining to the D.NMSc credential specifically references R.C. 4734.31(C)(31) and (C)(32) and Ohio Adm.Code 4734-9-02(C), which prohibit false, fraudulent, deceptive, or misleading representations in the practice of and advertisement for chiropractic services. The notice letter also specifically references Ohio Adm.Code 4734-9-08(C), which relates to professional ethics in the chiropractic profession. Although the notice letter does not specifically reference a particular section of Ohio Adm.Code 4734-9-08(C), it is clear from the notice letter that the board was concerned with appellant's use of the credential D.NMSc in his advertisements. Three different subsections of Ohio Adm.Code 4734-9-08(C) address credentialing: Ohio Adm.Code 4734-9-08(C)(6) requires that chiropractors "[p]resent their professional credentials in an accurate and dignified manner"; Ohio Adm.Code 4734-9-08(C)(7) requires chiropractors to "[p]romote or endorse themselves in a manner that is true and not in a false, fraudulent, deceptive, or misleading manner"; and Ohio Adm.Code 4734-9-08(C)(12) requires that chiropractors "[n]ot misrepresent their professional credentials, or present credentials in a misleading manner. Misleading credentials and/or misrepresentation of credentials includes advertising educational degrees not recognized by a national accrediting agency recognized by the secretary of the United States department of education * * *; and/or advertising specialty certifications or diplomates not issued by a duly recognized organization."

{¶ 30} Contrary to appellant's assertion, the notice letter provided appellant sufficient notice that he violated Ohio Adm.Code 4734-9-08(C)(6) and (C)(7). We determined in our resolution of the first assignment of error that appellant's use of the D.NMSc credential was both inaccurate and inherently misleading. The notice letter also provided appellant sufficient notice that he violated Ohio Adm.Code 4734-9-08(C)(12), which specifically addresses recognition of chiropractor credentialing. Moreover, even if the notice could have been more specific, appellant has not demonstrated any prejudice. The notice letter clearly alleged that appellant's use of the "D.NMSc" designation was "misleading." Appellant has failed to identify what, if any, additional evidence he would have produced or what, if any, additional legal arguments he would have made had the notice been more specific. Accordingly, because appellant had a full and fair opportunity

to prepare and present his defense at the disciplinary hearing, we find that no violation of appellant's Fourteenth Amendment due process rights occurred.

{¶ 31} The second assignment of error is overruled.

{¶ 32} In his third assignment of error, appellant argues that the common pleas court erred in determining that his use of the designation D.C. did not clearly identify him as a chiropractor in violation of Ohio Adm.Code 4734-9-02(F).

{¶ 33} Ohio Adm. Code 4734-9-02(F) requires that "[a]ll advertisements and solicitations shall clearly reveal that the advertisement and/or solicitation is being made on behalf of a chiropractic physician." Appellant cites R.C. 4734.14(A)(2), which states, in pertinent part, that "no person shall advertise or claim to be a chiropractor, doctor of chiropractic, or chiropractic physician, or use the initials 'D.C.' in connection with the person's name, unless the person holds a current, valid license from the board." Appellant advances a two-fold claim: (1) Ohio Adm.Code 4734-9-02(F) requires no special words of identification, and (2) R.C. 4734.14(A)(2) evidences the General Assembly's intent to reserve the D.C. credential for chiropractors. Accordingly, appellant contends that by using the D.C. designation reserved solely for chiropractic physicians, he clearly revealed that the advertisements were being made on behalf of a chiropractic physician as required by Ohio Adm.Code 4734-9-02(F).

{¶ 34} Appellant's argument does not account for Caudill's testimony, which established that the board determined in 2007 that the D.C. designation was insufficient to identify a chiropractic physician in advertisements and accordingly amended its administrative rules to require chiropractors to identify themselves using one of the terms set forth in Ohio Adm.Code 4734-9-02(G), i.e., chiropractic, chiropractor, doctor of chiropractic, or chiropractic physician. Caudill averred that the board amended the rule due to consumer complaints that advertisements using only the D.C. designation did not sufficiently signal that the advertisement was for a chiropractor. Indeed, as noted above, the board included in its adjudication order a statement setting forth its reasons for amending the rule requiring chiropractors to identify themselves in advertisements using one of the four terms set forth in Ohio Adm.Code 4734-9-02(G), i.e., because the general public did not understand the meaning of the acronym D.C. and was thus misled by its use in advertisements.

{¶ 35} Moreover, courts interpret administrative rules in the same manner as statutes. *McFee v. Nursing Care Mgt. of Am., Inc.,* 126 Ohio St.3d 183, 2010-Ohio-2744, ¶ 27, quoting *State ex rel. Brilliant Elec. Sign Co. v. Indus. Comm.*, 57 Ohio St.2d 51, 54 (1979) (stating that the " 'ordinary meaning rule' of statutory construction applies equally to administrative rules"). The primary goal in construing statutes and administrative rules is to ascertain and give effect to the intent of the rule-making authority. *State v. Hairston,* 101 Ohio St.3d 308, 2004-Ohio-969, ¶ 11.

{¶ 36} Related provisions of statutes and administrative rules must be read in pari materia. *State ex rel. Cordray v. Midway Motor Sales,* 122 Ohio St.3d 234, 2009-Ohio-2610, ¶ 25. In so doing, "court[s] must give a reasonable construction that provides the proper effect to each." *Id.*, citing *Maxfield v. Brooks*, 110 Ohio St. 560 (1924). "All provisions * * * bearing upon the same subject matter should be construed harmoniously unless they are irreconcilable." *Id.*, citing *Couts v. Rose,* 152 Ohio St. 458, 461 (1950).

{¶ 37} We believe that a plain, common sense reading of Ohio Adm. Code 4734-9-02(F) and (G) in pari materia leads to the conclusion that the board intended that to comply with Ohio Adm.Code 4734-9-02(F), a chiropractic physician may "clearly reveal" himself or herself in advertisements only by using one of the four designated terms set forth in Adm.Code 4734-9-02(G). Reading the rules in pari materia demonstrates that they clearly prescribe the manner in which chiropractors must identify themselves in advertisements. It is illogical to conclude that R.C. 4734.14(A)(2) and Ohio Adm.Code 4734-9-02(F) permit chiropractors to identify themselves only using the D.C. designation while Ohio Adm.Code 4734-9-02(G) mandates that chiropractors use one of four designated terms to identify themselves.

{¶ 38} Based upon the foregoing, we conclude that the common pleas court did not abuse its discretion in determining that there was reliable, probative, and substantial evidence to support the board's finding that appellant's use of the designation D.C. did not clearly identify him as a chiropractor in his print and television advertisements in violation of Ohio Adm.Code 4734-9-02(F), and that the board's order was in accordance with law.

{¶ 39} The third assignment of error is overruled.

{¶ 40} In his fourth assignment of error, appellant contends the common pleas court erred in determining that the board's "forced commercial disclosure" did not violate his

right to free speech under the First Amendment to the U.S. Constitution. Appellant identifies the board's "forced commercial disclosure" as the requirement in Ohio Adm.Code 4734-9-02(G) that chiropractors identify themselves in advertisements using one of four designated terms—chiropractic, chiropractor, doctor of chiropractic, or chiropractic physician.

{¶ 41} In *Zauderer v. Office of Disciplinary Counsel of Supreme Court,* 471 U.S. 626 (1985), the United States Supreme Court recognized that there are "material differences between disclosure requirements and outright prohibitions on speech." *Id.* at 650. Noting that in some instances, the "compulsion to speak may be as violative of the First Amendment as prohibitions on speech," the court nonetheless found that a statute that required an attorney to "include in his advertising purely factual and uncontroversial information about the terms under which his services will be available" did not constitute unconstitutional compulsion by the state. *Id.* at 650-51. In summarizing its commercial speech decisions to that point, the *Zauderer* court noted that "because disclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech, 'warning[s] or disclaimer[s] might be appropriately required * * * in order to dissipate the possibility of consumer confusion or deception." *Id.*, quoting *In re R.M.J.,* 455 U.S. at 201 (1982). The court further averred that "[w]e do not suggest that disclosure requirements do not implicate the advertiser's First Amendment rights at all. We recognize that unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech." *Id.* at 651. The Court ultimately held that "an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." *Id.*

{¶ 42} As we noted in our discussion of the third assignment of error, Caudill testified that the board implemented Ohio Adm.Code 4734-9-02(G) in 2007 in response to consumer complaints that advertisements using only the D.C. designation did not sufficiently signal that the advertisement was for a chiropractic physician. Appellant acknowledges Caudill's testimony, but asserts that the board presented no "empirical evidence" to support it. (Appellant's brief at 25). However, the *Zauderer* court noted that when the possibility of deception is "self-evident," the state need not " 'conduct a survey of

the * * * public before it [may] determine that the [advertisement] had a tendency to mislead.' " *Id.* at 652, quoting *FTC v. Colgate-Palmolive Co.,* 380 U.S. 374, 381-92 (1965). Appellee's position that it is deceptive to advertise for healthcare services without revealing the type of healthcare professional providing such services is reasonable enough to support a requirement that such information be disclosed. In our view, a requirement that a chiropractic physician disclose in an advertisement for chiropractic services that he or she is indeed a chiropractor is neither unjustified nor unduly burdensome.

{¶ 43} The fourth assignment of error is overruled.

{¶ 44} Having overruled appellant's four assignments error, we hereby affirm the judgment of Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and DORRAIN, JJ., concur.

————————————