[Cite as *State ex rel. Hodkinson v. Ohio State Racing Comm.*, 2020-Ohio-4073.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Ned Hodkinson, | : | |
| Relator, | : | |
| v. | : | No. 18AP-931 |
| Ohio State Racing Commission, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

---

D E C I S I O N

Rendered on August 11, 2020

---

**On brief:** *Graff & McGovern, LPA,* and *John A. Izzo* for relator.

**On brief:** *Dave Yost,* Attorney General, *Anthony J. Garcia,* and *Charles E. Febus*, for respondent.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Ned Hodkinson, initiated this original action seeking a writ of mandamus ordering respondent, Ohio State Racing Commission ("commission"), to hear his appeals from decisions of track judges regarding two particular horseraces.

{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate determined that the pertinent statutory and regulatory language requires the commission to permit and adjudicate a timely appeal from a track judges' decision finding no infraction occurred during a race. Hodkinson challenged the no-call decisions during two races, one

at Scioto Downs and one at the Fairfield County Fair. As to the July 29, 2016 Scioto Downs horserace, the magistrate reasoned that Hodkinson has no right to a writ of mandamus compelling the commission to conduct a hearing regarding that race because he failed to timely complain to the track judges about alleged interference by a competitor. The magistrate concluded that no further analysis of this challenge was necessary. But as to the October 13, 2016 Fairfield County Fair horserace, the magistrate found that Hodkinson had preserved his challenge to the results of that race by timely complaining of interference to the track judges. Hodkinson sought to appeal to the commission the track judges' finding of no interference. The commission declined to hear the appeal. The magistrate thus analyzed whether Hodkinson had a right to a hearing before the commission arising from the track judges' decision. The magistrate concluded that because Hodkinson was a person aggrieved by a ruling of the track judges, he was entitled to a commission hearing. Consequently, the magistrate recommends this court issue a writ of mandamus ordering the commission to reinstate and hear Hodkinson's appeal from the Fairfield County Fair track judges' decision.

{¶ 3} No party objects to the magistrate's findings of fact, and we agree the magistrate accurately outlined all the facts necessary to the disposition of this matter. Nor does any party object to the magistrate's conclusions of law as to the Scioto Downs race challenge. We likewise find no error as to that issue. Because Hodkinson did not timely complain to track judges pursuant to Ohio Adm.Code 3769-17-11(B), he did not properly initiate a review of his allegation of improper interference by a competing driver. Thus, as the magistrate concluded, further analysis as to the Scioto Downs race is unnecessary.

{¶ 4} As to the Fairfield County Fair race, the commission has filed objections to the magistrate's decision. It contends the magistrate erred in concluding Hodkinson was "aggrieved" by a Fairfield County Fair track judges' "ruling" for the purpose of Ohio Adm.Code 3769-17-41. Thus, the commission contends Hodkinson had no right to a hearing. We agree.

{¶ 5} The commission, which consists of five members appointed by the governor, is vested with broad regulatory authority over horse racing. R.C. 3769.02; R.C. 3769.03. Pursuant to R.C. 3769.03, the commission "shall prescribe the rules and conditions under which horse racing may be conducted" and "may issue, deny, suspend, or revoke licenses

to those persons engaged in racing and to those employees of permit holders as is in the public interest for the purpose of maintaining a proper control over horse-racing meetings." These rules provide for the presence of three judges at the racetrack—a presiding judge and two associate judges. *See* Ohio Adm.Code 3769-14-25; Ohio Adm.Code 3769-14-26. The duties of the judges include investigating "any apparent or possible interference * * * whether or not a complaint has been made by the driver." Ohio Adm.Code 3769-14-41(A). The judges may sanction a licensee who engaged in foul driving, and they may reorder the placement of horses after the running of a race based on a finding of interference. Ohio Adm.Code 3769-14-29(A); Ohio Adm.Code 3769-17-14.

{¶ 6} Ohio Adm.Code 3769-17-41 authorizes licensee appeals to the commission. The current version of Ohio Adm.Code 3769-17-41 states in pertinent part: "Any licensee fined, suspended, expelled or any other penalty imposed [sic] by any judge's ruling may appeal to the commission for a review of the decision." However, before this rule was amended in 2019, it stated in pertinent part: "Any licensee fined, suspended, expelled or otherwise *aggrieved* by any judges' *ruling* in the application of the rules of racing may appeal to the commission for a review of the decision." (Emphasis added.) The parties dispute the meaning of the emphasized terms in this former version, the version applicable here. The commission argues the magistrate misapplied this rule authorizing an appeal to the commission by misconstruing the meaning of "aggrieved" and "ruling." Conversely, Hodkinson argues the magistrate did not err in finding that he was "aggrieved" by a judges' "ruling," thereby entitling him to a hearing before the commission.

{¶ 7} Courts interpret administrative rules in the same manner as statutes. *Wilson v. State Chiropractic Bd.*, 10th Dist. No. 18AP-739, 2019-Ohio-3243, ¶ 35. "The primary goal in construing statutes and administrative rules is to ascertain and give effect to the intent of the rule-making authority." *Id.*, citing *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, ¶ 11. As the magistrate noted, the commission did not define the terms "aggrieved" and "ruling" for the purpose of former Ohio Adm.Code 3769-17-41. The magistrate concluded that Hodkinson was "aggrieved," based on how that term is commonly defined, because he suffered a detriment when the track judges denied his requested relief. However, by improperly isolating the term "aggrieved" from its context,

the magistrate applied too broad of a meaning to the term for the purpose of former Ohio Adm.Code 3769-17-41.

{¶ 8} Even construing the track judges' decision finding no merit to Hodkinson's interference complaint as a "ruling," he was not "aggrieved" by that ruling. In former Ohio Adm.Code 3769-17-41, the words "otherwise aggrieved" were used to conclude a series of terms relating to punitive consequences for a licensee that may arise from a track judges' ruling. "Under the rule of ejusdem generis, where in a statute terms are first used which are confined to a particular class of objects having well-known and definite features and characteristics, and then afterwards a term having perhaps a broader signification is conjoined, such latter term is, as indicative of legislative intent, to be considered as embracing only things of a similar character as those comprehended by the preceding limited and confined terms." *State v. Aspell*, 10 Ohio St.2d 1 (1967), paragraph two of syllabus. "Thus, in the absence of a clear legislative manifestation to the contrary, where the statute enumerates specific subjects or things of a similar nature, kind, or class, followed by general words prefaced by 'or other', the meaning of the general words ordinarily will be construed as restricted by the specific designations and as including only things of the same nature, kind, or class as those specifically enumerated." *Sells v. Historical Ctr.*, 10th Dist. No. 82AP-508, 1982 Ohio App. LEXIS 15081, at *4 (Nov. 30, 1982). *See State v. Mitchell*, 32 Ohio App.2d 16 (10th Dist.1972) (finding the use of the word "otherwise" adjacent to a term concluding a list reflected legislative intent to restrict the meaning of that term to the "same basic nature" of the preceding terms).

{¶ 9} Applying the rule of ejusdem generis here, the term "aggrieved" has a more limited application than that found by the magistrate. We find former Ohio Adm.Code 3769-17-41 reflected the commission's intent to restrict the meaning of aggrieved to circumstances fundamentally similar to those involving a licensee being fined, suspended, or expelled. If a licensee is fined, suspended, or expelled, a punitive action has been taken against the licensee. Consequently, for a licensee to be "otherwise aggrieved," there must have been some form of a punitive action taken against the licensee. Hodkinson essentially contends that he was aggrieved because the track judges found no merit to his interference complaint, thereby declining to reorder the placing of horses, including his horse. But no punitive action was taken against him by track judges. Because Hodkinson was not

aggrieved by a track judges' ruling for the purpose of former Ohio Adm.Code 3769-17-41, he had no right to an appeal before the commission.

{¶ 10}  For these reasons, we find the commission's objections have merit.

{¶ 11}  Following our independent review of the record pursuant to Civ.R. 53, we concur with the magistrate's conclusions of law as to the Scioto Downs race at issue.  The magistrate erred, however, in determining that Hodkinson is entitled to a writ of mandamus ordering the commission to reinstate his appeal concerning the Fairfield County Fair race.  While the magistrate properly discerned the salient facts, he misapplied the pertinent law to those facts.  Hodkinson had no right, pursuant to former Ohio Adm.Code 3769-17-41, to appeal from the Fairfield County Fair track judges' decision not to take any action against a licensee based on his allegation of improper interference.  Therefore, we adopt the magistrate's findings of fact and his conclusions of law as to the Scioto Downs race, but not his conclusions of law as to the Fairfield County Fair race.  We sustain the commission's objections and deny Hodkinson's requested writ.

*Objections sustained;*
*writ denied.*

BRUNNER and NELSON, JJ., concur.

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Ned Hodkinson,                    :

         Relator,                                :

v.                                               :                    No. 18AP-931

Ohio State Racing Commission,                   :                    (REGULAR CALENDAR)

         Respondent.                             :

M A G I S T R A T E ' S   D E C I S I O N

Rendered on January 24, 2020

*Graff & McGovern, LPA,* and *John A. Izzo* for relator.

*Dave Yost*, Attorney General, *Anthony J. Garcia,* and *Charles E. Febus*, for respondent.

IN MANDAMUS

{¶ 12} Relator, Ned Hodkinson, has filed this original action seeking a writ of mandamus ordering respondent, Ohio State Racing Commission, to conduct hearings pertaining to his attempt to appeal rulings by racetrack judges that detrimentally affected relator's results in Standardbred horse races in which relator appeared as a licensed owner, driver, and trainer.

Findings of Fact:

{¶ 13} 1. Respondent is a state agency created pursuant to R.C. 3769.02. Respondent is charged with oversight of "rules and conditions under which horse racing may be conducted" in Ohio. R.C. 3769.03. Respondent consists of five commission members appointed by the Governor of Ohio. R.C. 3769.02.

{¶ 14} 2. Respondent "may issue, deny, suspend, diminish, or revoke permits to conduct horse racing" in Ohio, and impose penalties for violation of rules or orders issued by the commission.  R.C. 3769.03.

{¶ 15} 3. Respondent has promulgated rules under which horse racing operations are supervised on-site by track judges, who may address complaints from participants regarding the conduct of the race and related activities. Ohio Adm.Code 3769-14-25; Ohio Adm.Code 3769-14-29. The judges, three in number including a presiding judge, are charged with investigating "any apparent or possible interference whether or not a complaint has been made by the driver."  Ohio Adm.Code 3769-14-41(A). Appeals from track judge decisions may be taken to the commission.  Ohio Adm.Code 3769-17-41(A).

{¶ 16} 4. Relator is an owner, driver, and trainer licensed by respondent.

{¶ 17} 5. By statute, respondent maintains its principal place of business in Franklin County, Ohio. R.C. 3769.02.

{¶ 18} 6. Jurisdiction and venue for an original action in mandamus lie with this court pursuant to the Ohio Constitution, Article IV, Section 3(B)(1) and R.C. 2731.02.

{¶ 19} 7. Relator filed his complaint for a writ of mandamus in this court on December 5, 2018.

{¶ 20} 8. Relator's complaint alleges that on two instances in 2016 (the "Scioto Downs incident" and the "Fairfield County incident"), as a driver in Standardbred races, he suffered improper interference from competing drivers that should have given rise to corrective action with respect to his final finish in the race and/or disciplinary action against the offending drivers.

{¶ 21} 9. Relator's complaint alleges that he complained to the presiding track judge on both occasions, but no official action was taken by the track judges to modify the race outcome or discipline the offending drivers, the commission refused action on appeal, and judicial appeals were rejected for lack of jurisdiction.

{¶ 22} 10.  In the Scioto Downs incident, the track judges' written report for the day's racing indicates that no objections were filed for the race in question.  The affidavit of the presiding track judge, John Yinger, states that he and the two associate judges reviewed the race and concluded that no foul occurred. Yinger did not hear from the

starting judge or any drivers regarding possible fouls before the race results became official. Yinger's affidavit states that relator texted him approximately one hour after the race had concluded to complain of interference. (Yinger affidavit, exhibit 1 to respondent's brief, 6.)

{¶ 23} 11. Relator's affidavit states that despite his belief that he had suffered prejudicial interference in the course of the Scioto Downs race, he did not immediately object after the race concluded, but waited until later in the day to contact the presiding track judge. (Relator's affidavit, exhibit 1 to relator's brief, 17.)

{¶ 24} 12. Relator attempted an appeal to respondent from the determination of the track judges in the Scioto Downs incident pursuant to the version of Ohio Adm.Code 3769-17-41(A) in effect at the time. The notice of appeal form is dated August 2, 2016.

{¶ 25} 13. Respondent initially set the Scioto Downs matter for an appeals hearing, then notified relator by letter on October 6, 2016 that the hearing was canceled and would not be rescheduled. The letter states, "Pursuant to Chapter 119 of the Ohio Revised Code and R.C. 3769 and the applicable rules of racing, the Commission does not have the legal authority to entertain your 'appeal.' In this instance, there was no ruling taken against your license or any other licensee. As a result, you are not entitled to a hearing." (Stipulated Evidence, Ex. 10, 53.)

{¶ 26} 14. Relator appealed to the Franklin County Court of Common Pleas pursuant to R.C. 119.12 to contest respondent's refusal to grant a hearing in the Scioto Downs incident.

{¶ 27} 15. The common pleas court granted a motion by respondent to dismiss relator's appeal in the Scioto Downs incident. The court ruled that respondent, in refusing to adjudicate, had not issued a final adjudication from which an R.C. 119.12 appeal could be taken to the common pleas court.

{¶ 28} 16. Relator filed a notice of appeal to the Tenth District Court of Appeals, which affirmed the common pleas court's decision regarding the Scioto Downs incident. *Hodkinson v. Ohio State Racing Comm.*, 10th Dist. No. 17AP-33, 2017-Ohio-7494 ("*Hodkinson I*").

{¶ 29} 17. In the Fairfield County incident, relator complained to the starter and the presiding track judge immediately after the race. The judges ruled no infringement took place.

{¶ 30} 18. The commission refused to accept relator's appeal from the track judges' "non-call" in the Fairfield County incident. The commission's notice refusing the appeal contained language comparable to the commission's October 6, 2016 letter declining jurisdiction over relator's appeal from the Scioto Downs incident.

{¶ 31} 19. Relator did not attempt a further appeal to the common pleas court from the commission's refusal to accept his appeal in the Fairfield County incident.

{¶ 32} 20. Respondent filed its motion to dismiss this action on January 4, 2019 for failure to state a claim on the face of the complaint. The magistrate denied the motion to dismiss by order entered February 14, 2019.

{¶ 33} 21. The parties then filed a stipulated joint statement of facts and documentary evidence and briefed the matter for submission to the magistrate.

{¶ 34} 22. The parties have attached additional affidavits to their briefs. Neither party objects to the other's submission of this additional evidence after the evidentiary deadline in the case scheduling order, and the magistrate has considered said affidavits in the preceding findings of fact.

Discussion and Conclusions of Law:

{¶ 35} For a writ of mandamus to issue, the relator must demonstrate (1) that relator has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the acts requested, and (3) that relator has no plain and adequate remedy in the ordinary course of law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983). In a mandamus proceeding, courts are not authorized to create a legal duty to be enforced; it is the duty of the legislative branch of government to do so. *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 18.

{¶ 36} This court's holding in *Hodkinson I* makes clear that relator has no remedy in the ordinary course of the law for the Scioto Downs incident. Relator does not have a legal remedy in the form of an administrative appeal under R.C. Chapter 119. The matter "did not proceed forward to an adjudication on the merits before the commission," and

therefore, relator could not appeal from an "adjudication," as would be required by R.C. 119.12. *Hodkinson I* at ¶ 15. Mandamus is therefore appropriate insofar as relator lacks a legal remedy to seek redress, if appropriate, from the commission's inaction. Relator was not required to attempt a similarly futile appeal to the common pleas court in the Fairfield County incident in order to exhaust his administrative remedies in that case.

{¶ 37} Relator asserts that he has a legal right to have his appeals heard by respondent and respondent has a clear legal duty to grant such hearings. The administrative rule at the heart of this case is Ohio Adm.Code 3769-17-41, which in 2016 provided in pertinent part as follows:

> (A) Any licensee fined, suspended, expelled or otherwise aggrieved by any judges' ruling in the application of the rules of racing may appeal to the commission for a review of the decision. Such appeals shall be made in writing and must be filed with the presiding judge within forty-eight hours after [sic] notification of the ruling. Such forty-eight-hour period shall not include any day the judges are not in attendance at their office. The chairman of the commission may appoint a referee to hear such appeals.
>
> (B) All appeals of the judges' final rulings shall be made in writing to the commission.

{¶ 38} The critical language here is found in subsection A, which states that "[a]ny licensee fined, suspended, expelled or *otherwise aggrieved* by any judges' ruling in the application of the rules of racing may appeal to the commission for a review of the decision." (emphasis added.) Respondent insists that this language applies only to instances in which the track judges have affirmatively ruled, either sua sponte or upon complaint, that an infraction occurred in a race, and does not apply to instances in which the track judges determined that no infraction occurred. As a result, respondent contends, there is no right to appeal from any in-race controversy unless the track judges have affirmatively ruled, as they declined to do here, that an infraction occurred. [1]

---

[1] The magistrate notes that Ohio Adm.Code 3769-17-41 was substantially amended effective June 15, 2019 to eliminate the term "aggrieved" and limit appeals to cases involving affirmative measures imposed by the track judges: "Any licensee fined, suspended, expelled or any other penalty imposed by any judge's ruling may appeal to the commission for a review of the decision. Such appeals shall be made in writing and must be filed with the presiding judge within forty-eight hours after notification of the ruling. Such forty-eight-hour period shall not include any day the judges are not in attendance at their office. The chairman of the commission may

{¶ 39} Respondent also asserts that the practical realities of pari-mutuel racing make any appeal from a non-call moot, since the race results have become final and all bets paid.

{¶ 40} Relator responds by arguing that a "non-call" can leave a licensee just as aggrieved as a finding of infraction. Relator also points out that if the betting outcome of a race cannot be changed after the fact, respondent can still reorder the race, which impacts horses in qualifying status, and impose penalties that were foregone by the track judges. Relator emphasizes that respondent in the past has accepted appeals from such "non-calls." Relator cites Ohio State Racing Commission No. 2006-42, *Wollam v. Ohio Stating Racing Comm.*, in which respondent adjudicated the question of whether a judges' decision to *not* advance the final placement of a horse affected by misconduct from two other horses was in error.

{¶ 41} Fortunately, the magistrate need not consider here those arguments addressing the practical intricacies and customs in the harness racing industry. In the context of a mandamus action, the question before the magistrate is a purely legal one: does the pertinent statutory and regulatory language require the commission to allow and adjudicate an appeal from a "non-call" by track judges?

{¶ 42} The magistrate first concludes that in the Scioto Downs incident, the discussion is curtailed because relator did not preserve his right to appeal to the commission. Relator failed to institute a timely objection that would have allowed the track judges to review the race and ascertain the validity of his complaint regarding the racing conduct of his competitors.

{¶ 43} The first step in initiating a complaint regarding alleged misconduct during a race is defined by Ohio Adm.Code 3769-17-11(B), which states in pertinent part as follows:

> (B) All complaints by drivers of foul driving or misconduct during the race must be made after the race, unless the driver is prevented from doing so by an accident or injury. Any driver desiring to enter a claim of foul or other complaint of violation of the rules must, before dismounting, indicate to the judges

---

appoint a hearing officer to hear such appeals." Although the new language clearly and unequivocally supports respondent's position, in the present case the court applies the pertinent statutory and regulatory language as it existed at the time the commission refused to take jurisdiction over relator's appeal.

or patrol judge his desire to enter such claim or complaint and, upon dismounting, shall proceed to the telephone or judges' stand where and when such claim, objection, or complaint shall be immediately entered. The judges shall not cause the official sign to be displayed until such claim, objection, or complaint shall have been entered and considered.

{¶ 44} As set forth in the findings of fact, relator did not immediately lodge his complaint following the Scioto Downs incident as required by Ohio Adm.Code 3769-17-11(B). Several races passed before relator brought his protest to the presiding race judge by means of a text message. In contrast, in the Fairfield County incident, relator complained of a foul before dismounting. The judges thereafter conferred and declined to issue a ruling of foul for a violation.

{¶ 45} The magistrate finds that the two incidents are not identically situated for purposes of determining relator's right to a writ compelling the commission to conduct a hearing. Because relator did not preserve his right to lodge a complaint on the Scioto Downs incident, he had no right to expect a ruling from the track judges. In contrast, the Fairfield County incident proceeded to the point of a preserved complaint and discussion by the track judges. The magistrate's first determination in this case, therefore, is that relator is not entitled to a writ of mandamus to compel the commission to hold a hearing regarding the Scioto Downs incident. The Fairfield County incident merits further discussion.

{¶ 46} The two critical terms to be assessed in Ohio Adm.Code 3769-17-41 are whether relator is a person *aggrieved* by a *ruling* of the track judges. Neither term is defined in the statutory scheme governing horse racing in Ohio.

{¶ 47} In relation to other statutes, the Supreme Court of Ohio has defined the term "aggrieved": " 'aggrieved' is commonly defined as 'having legal rights that are adversely affected; having been harmed by an infringement of legal rights.' " *Rhodes v. New Philadelphia*, 129 Ohio State.3d 304, 2011-Ohio-3279, ¶ 18, quoting *Black's Law Dictionary* 77 (9th Ed.2009). Although the term aggrieved is often taken to include some substantive merit in the complaint, as in "actually harmed" by an action, leading to the unnecessary qualification of a party as "*allegedly* aggrieved," it is best seen not as a

normative term but simply as the subjective perception of the complaining party that a wrong capable of legal redress has occurred, with the *merits* of that perceived wrong to be then decided by the tribunal. The magistrate concludes that, in the Fairfield County case, relator fits this description, and is an aggrieved party. Ohio Adm.Code 3769-17-41(A). Relator timely placed an objection to the conduct and outcome of the race and was denied relief by the independent on-site arbiters of fair racing, suffering some detriment that need not be precisely defined at this time.

{¶ 48} The magistrate then turns to what may constitute a ruling in application to the rules of racing, and whether this includes the "non-call" that occurred in the Fairfield County incident. The commission asserts that only an affirmative ruling by the track judges, that is, an affirmative determination that a complaint has merit and the judges will impose a penalty on a competitor, may be appealed. Certainly, that fits the definition of the newer version Ohio Adm.Code 3769-17-41 effective in 2019. Nonetheless, the language of former Ohio Adm.Code 3769-17-41(A) gives no clue that track judges *rule* when sustaining an objection, but do not *rule* when denying one. By analogy, no trial court making an evidentiary or procedural determination would make that distinction. "A ruling, generally, is a decision, an adjudication of some matter in dispute. More specifically, a ruling is a decision by a judge or an official that applies a rule or law in a given situation, thus interpreting or clarifying the rule." *The Wolters Kluwer Bouvier Law Dictionary* (Desk Ed.2012). In the absence of any statutory definition to the contrary, application of a common definition of "to rule" would compel a conclusion that it applies as readily to a decision *not* to sanction as a decision to sanction. There is no logical reason, when assessing the right to appeal under former Ohio Adm.Code 3769-17-41, to distinguish between the track judges' decision here not to take action for the alleged racing infraction and situations in which track judges found a violation and assessed a penalty.

{¶ 49} It is therefore the magistrate's decision that a writ of mandamus shall issue ordering the commission to reinstate relator's appeal in the Fairfield County incident, and grant relator a hearing in that appeal.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).